## Badenhausen Corporation *v.* Lang Company et al., Appellants.

Argued December 7, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Maurice W. Sloan, Jr.,* with him *Stanley B. Rice* and *Raymond A. White, Jr.,* of *Sloan, White & Sloan,* for appellants.

*Joseph J. Brown,* with him *John Arthur Brown,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 30, 1934:

The lower court entered judgment against defendant for want of a sufficient affidavit of defense.

The suit was brought to recover the balance due on the purchase price of a boiler which plaintiff had furnished and erected in the power house of defendant's plant. The price of the boiler was $78,000. Payments had been made on account, leaving a balance due of $22,600. In addition to the boiler, the plaintiff furnished certain

other work and materials for defendant and charged therefor the sum of $1,849.50, making its total claim $24,449.50, for which sum, with interest on parts thereof from specified dates, the judgment was entered.

Plaintiff alleges that the boiler was completed on April 10, 1931, in compliance with the terms of the contract, and that since that date the defendant has used and operated it. In its affidavit of defense, which consists of seventy-one numbered paragraphs and which is entirely lacking in explicitness, appellant denies that the date April 10, 1931, was that specified for the time of completion of the erection of the boiler, and avers that it was to have been erected complete on or before September 15, 1930. It is alleged in the affidavit that the boiler was not furnished in accordance with the specifications and guarantees, without specifying the respects in which it did not comply therewith. It is admitted that the defendant continues to operate the boiler.

It is claimed by defendant that, in addition to the credits which plaintiff allows, a further credit should be given to it for a payment of $5,000 made "on or about" September 12, 1931, which payment it is averred was made by check drawn to the order of the Commercial National Bank & Trust Company, in accordance with instructions from the treasurer of the plaintiff. There is no explanation as to why a check payable other than to plaintiff should be considered as payment to it. Without more it cannot be so treated.

The various items of defense, in addition to the claim for the $5,000 credit, are contained in counterclaims set up in the affidavit of defense. They aggregate more than $438,000, almost six times the total cost of the boiler. It is first alleged that as a result of plaintiff's delay in completing the installation of the boiler the defendant suffered a loss represented by the difference between the cost of the coal consumed in the old boilers in the defendant's plant during the period from September 15, 1930, to April 10, 1931, and the cost of the coal consump-

tion of the boiler which should have been completed. The difference in coal consumption is said to be fifty-four tons per day, which at a cost of $4.13 per ton makes a total loss of $46,611.18 to the defendant. In the many respects pointed out in plaintiff's rule for judgment, these and other averments are without particularization, most general in terms and insufficient, both as matters of counterclaim and of defense. Damages averred by a defendant in a counterclaim should be as clear, precise and concise as those required in a statement of claim: Guaranty Motors Co. v. Hudford Phila. Sales Co., 264 Pa. 557; Frick & Lindsay v. Kent & Kervin, 265 Pa. 264, 267; Gross v. Exeter Machine Works, Inc., 277 Pa. 363, 368.

It is also alleged that, as a result of the faulty installation of a draft fan, it was necessary for the defendant to make certain replacements and repairs at a cost of $627.13. It is not alleged that the draft fan failed to comply with the contract, and there are no sufficient averments as to the items furnished to make them proper matters of defense or of counterclaim. There is an allegation that certain other appliances in connection with the boiler were defective and required defendant to make expenditures amounting to $1,567.37. These items are insufficiently pleaded.

A claim is made for the cost to defendant of a test of the boiler at an alleged outlay of $794.95. There is no sufficient particularity as to this item. Nothing appears fixing defendant with liability therefor. It is averred that the defendant had to build a flue gas scrubber in conjunction with the boiler to remove ash and soot at a cost of $2,677.18. The averments as to this are general in their nature and not adequate to found a defense or a counterclaim upon. In connection with the tubes in the boiler which were alleged to have sagged, the defendant claims to have made an outlay of $306.93. There is no sufficient particularization of this claim. It is alleged that, because the boiler in generating steam was below

the efficiency specified in the contract, it was necessary for defendant to consume 2,225 additional tons of coal more than if the boiler had been furnished in accordance with the contract, at an expense to the defendant of $9,745.50. There are no details as to the defects in the boiler or other adequate information furnished as to this claim.

It is alleged that owing to the improper design of the boiler the flue gases overheat and that it has been necessary to make replacements in the boiler. Defendant avers that the estimated cost of remedying this condition is $11,356. No information is furnished as to the propriety of the items making up this figure or as to the basis of the estimate. It is alleged that the loss to the defendant on account of the boiler's being not over 75% of the contracted capacity is 25% of the purchase price, or $19,500. No further particulars are vouchsafed. There is a claim made for loss to defendant on account of the efficiency of the boiler being 11.15% less than that provided for in the contract. It is stated that defendant has to burn 11.15% more coal, so that, on the basis of 300 working days per year at the rate of 88 tons of coal per day at $4.13 per ton, there is an increased cost to the defendant of $12,157 per year. This item is capitalized (presumably over a period of fifteen years) at $182,355. In view of its manifest vagueness and absence of legal foundation, this requires no further comment. It is also averred that the lack of capacity of the boiler makes it necessary to operate two boilers at partial, instead of one boiler at full, rate, "which causes loss due to radiation, cost of operating, auxiliaries, labor of operation, increased maintenance and increased repairs, which makes a loss of $10,546 per year, which capitalized equals $158,190." We think no comment is required as to this claim; its lack of legal support is clear. It is alleged that the insulation of the boiler was not in accordance with the contract, and a claim is made for $3,124 as an estimated cost for remedying this, without further speci-

fication than that it is "the estimated cost to the defendant." This claim is too indefinite to have legal standing.

There are several allegations in the counterclaim of expenses incurred because of defects in machinery supplied or faulty installation thereof. These are all insufficient in that none shows with the required particularity in what respect the article in question did not comply with the terms of the contract.

There are other items in the counterclaim, in some of which claim is made for materials alleged to have been furnished by defendant to plaintiff. No details are given as to dates, plaintiff's agreement to pay, and other necessary averments. We agree entirely with the court below when it said: "A reading of all the subsequent paragraphs in the counterclaim shows them to be equally lacking in precision and reasonable particularity. This court on a prior occasion advised the defendant to be more specific in its averments so that an issue might be raised at a trial that would be understandable. The present averments are just as numerous and in most cases are just as vague and general. With a claim made by it in the sum of $425,000 after it has already made payments to the plaintiff on account of the purchase price in the sum of $15,000, a doubt is raised as to the good faith of the defense. The many averments presented by the defendant instead of clarifying the issue only tend to make it more confusing."

After a careful study of the affidavit of defense, we are of opinion that as a whole it is so vague and lacking in particularity as to make it insufficient to prevent judgment. The court below properly so determined.

The judgment is affirmed.